FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 NOV -9 PM 2:50
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WILLIE ALBERT DOOLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 111-180 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Willie A. Dooley ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff protectively applied for DIB and SSI on September 11, 2007, alleging a disability onset date of August 1, 2006. Tr. ("R."), p. 153. The Social Security Administration denied Plaintiff's applications initially, R. 64-71, and on reconsideration, R. 72-78. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and

the ALJ held a video hearing on December 8, 2009. R. 25-59. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as James R. Newton, a Vocational Expert ("VE"). See id. On January 11, 2010, the ALJ issued an unfavorable decision. R. 9-24.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since August 1, 2006, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the severe impairments of seizure disorder, diabetes mellitus, status post lumbothoracic vertebral fracture, degenerative disc disease, anxiety, depression, and borderline intellectual functioning. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work[1] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)

---

[1]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

2

except that he must be allowed to sit or stand as needed and must avoid any climbing of ropes, ladders, or scaffolding and any work at heights or around hazards. The claimant is limited to no more than occasional twisting, bending, balancing, crouching, crawling, or stooping. Further, the claimant is limited to simple, unskilled tasks that require no more than occasional contact with the general public and occasional changes to the work setting. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including "table worker," poultry boner, and bakery worker. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, from August 1, 2006 through January 11, 2010 (the date of the ALJ's decision).

R. 14-20.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff argues (1) that the ALJ "inadequately evaluated" a consultative psychological evaluation performed on December 4, 2009, and (2) that a remand is warranted in order to consider newly submitted medical evidence that he has included with his brief. (See doc. no. 13 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed, and that the newly submitted evidence does not warrant remand. (See doc. no. 14 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548

4

(11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions is not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. New Evidence

There is a threshold issue in this case as to whether the Court may consider new evidence not included in the administrative record that Plaintiff has attached to his brief. The evidence consists of a letter from Kevin Turner, Ph.D, dated November 1, 2010, as well as a new medical opinion from Dr. Turner, dated October 28, 2010. (See doc. no. 13-1.) Both documents were thus prepared after the ALJ's decision on January 11, 2010, but well before the AC's denial of Plaintiff's request for review on August 31, 2011. In the letter, Dr. Turner explains that, based on his evaluation of Plaintiff on December 4, 2009 – the same evaluation that is the subject of the instant appeal, as discussed below – as well as a reading of an evaluation performed by Frederick House, M.D., on June 18, 2009, he has completed a "Medical Opinion Re: Ability to do Work Related Activities (Mental)." (Id. at 1.) Dr. Turner further notes that his newly issued opinion was valid on December 4, 2009, the date of Plaintiff's evaluation, and that its validity is ongoing. (Id.) In the opinion itself, Dr.

5

Turner essentially reinterprets his previous findings in the context of Plaintiff's ability to perform work-related activities and finds that Plaintiff would "probably not be able to complete a work day," among other things. (Id. at 2.)

Plaintiff contends that his case should be remanded to the ALJ for proper consideration of the new evidence pursuant to sentence six of § 405(g). (Pl.'s Br., p. 10.) Under Eleventh Circuit law, remand under sentence six may only be had when new evidence is presented in the first instance to the district court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007). In contrast, under sentence four, when new evidence was properly submitted at the administrative level, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Id. at 1262. In other words, the relevant question under sentence four is whether "new, material, chronologically relevant evidence" was presented to the AC that "render[ed] the decision of the [ALJ] to deny benefits unsupported by substantial evidence [such that] the [AC] erred by denying review." Id. at 1261, 1266.

Here, Plaintiff asserts that, although his prior counsel submitted the evidence in question to the AC, it was "for some reason" not included in the record and thus not considered by the AC. (Pl.'s Br., pp. 9-10.) Plaintiff additionally states that the evidence is "certainly new, in that it did not exist at the time of the hearing and is not a part of the record of the administrative proceedings." (Id. at 9.) The Commissioner argues that, given that the record shows that the AC did receive some new evidence from Plaintiff, but that the evidence in question is not included on the AC's list of medical exhibits, "one must infer" that Plaintiff did not submit the evidence in question. (Comm'r's Br., p. 9.) Additionally,

although the section heading in the Commissioner's brief asserts that a remand is not warranted under sentence four of § 405(g), and although he asserts that Plaintiff "incorrectly asks for remand pursuant to sentence six," he devotes his argument to an analysis of the factors that must be met to justify a sentence six remand, and his ultimate conclusion is that a sentence six remand is not warranted. (See id. at 9-12.) The Court concludes that both parties were correct in their reliance upon section six in their briefs. Given that the first appearance of the evidence is before this Court – such that it is only now being considered for the first time – Plaintiff has properly framed his request for remand under sentence six rather than sentence four. See Ingram, 496 F.3d at 1267 (noting that "settled precedents establish that a sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review").

Sentence six of § 405(g) authorizes the Court "to remand a case: 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996) (quoting 42 U.S.C. § 405(g)); see also Reynolds v. Comm'r of Soc. Sec., 457 F. App'x 850, 853 (11th Cir. 2012) (*per curiam*) ("The sixth sentence of 42 U.S.C. § 405(g) provides that a reviewing court may remand a Social Security case to the agency for consideration of new evidence that previously was unavailable."). Specifically, in order to demonstrate that remand is appropriate, a claimant must show that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Enix

v. Comm'r of Soc. Sec., 461 F. App'x 861, 865 (11th Cir. 2012) (*per curiam*) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

Here, per the first two prongs of the test, the Court finds that Plaintiff has failed to demonstrate that there is new, noncumulative evidence and that the evidence is material such that there is a reasonable possibility that it would change the ALJ's decision. First, although Dr. Turner's October 28, 2010 medical assessment is irrefutably "new," in that it postdates the ALJ's January 11, 2010 decision, it is not altogether noncumulative, in that Dr. Turner specifically notes that it is based on his earlier evaluation of Plaintiff from December 4, 2009 as well as a review of Dr. House's report from June 19, 2009. (Doc. no. 13-1, p. 1.) In other words, as correctly noted by the Commissioner (see Comm'r's Br., p. 11), Dr. Turner's new assessment is not based on any additional evidence or updated medical records outside of those already in the record, and instead simply recasts his previous findings in the light of Plaintiff's ability to perform work-related activities. (Doc. no. 13-1, pp. 2-3.)

Even if the Court were to construe Dr. Turner's repackaged assessment as entirely noncumulative – which it does not – Plaintiff also fails to show that the assessment is material in the sense that there is a reasonable possibility that it would change the ALJ's decision. In his decision, as discussed in more detail infra Part III.B, the ALJ clearly noted the discrepancy between the December 4, 2009 evaluation results and Dr. Turner's accompanying opinion regarding the same, stating in particular that Dr. Turner "apparently disregard[ed] the claimant's lack of memory deficits on [the] office examination." R. 19. Notably, the new evidence submitted here consists only of an additional medical opinion by Dr. Turner based on the same December 4, 2009 evaluation results that, as noted, the ALJ found to be contradictory to Dr. Turner's first opinion. Thus, the Court cannot find – and Plaintiff does

8

not demonstrate – any reason to conclude that there is a reasonable possibility that the new evidence would change the administrative result, especially considering that the new opinion is based on the same evaluation results that the ALJ already considered in conjunction with Dr. Turner's first opinion and, moreover, is nearly one year removed from them.[2]

Finally, the Court finds that, even if the new evidence was noncumulative and material, Plaintiff has failed to demonstrate per the third prong of the test that there was good cause for his failure to submit the new evidence at the administrative level. As noted above, Plaintiff's only attempt to explain his failure to submit the new evidence is a conclusory statement that the evidence *was*, in fact, submitted by his counsel at the administrative level, but that it was "for some reason" simply not included in the AC's record.[3] (Pl's. Br., p. 10.) Notably, Plaintiff does not provide any sort of proof beyond that statement indicating that he actually submitted the evidence in question. The record shows that Plaintiff filed four new exhibits dated between February 15, 2010 and May 18, 2011, and that he filed nothing dated between October 19, 2010 and December 16, 2010. R. 4. Given that the AC considered evidence that was dated May 18, 2011, id., it logically follows that Plaintiff had at least six months following his acquisition of the evidence in question to submit that evidence to the AC. By all appearances, Plaintiff failed to do so. Given that Dr. Turner's letter and new opinion are

---

[2]Moreover, as explained infra Part III.B, the ALJ is not required to give Dr. Turner's consultative evaluation or opinions any controlling or heightened amount of weight in making his decision.

[3]While Plaintiff also asserts that "it could be argued" that Plaintiff's prior counsel felt compelled to obtain the new evidence as a result of the ALJ's "confusing evaluation of Dr. Turner's report" (doc. no. 13, p. 10), Plaintiff's prior counsel's motivation for acquiring the new evidence has no bearing on Plaintiff's failure to submit that evidence to the AC.

9

dated November 1, 2010 and October 28, 2010, and that Plaintiff's other newly submitted evidence appears to be consistently included in the record, the Court will not construe Plaintiff's conclusory argument – that, contrary to the record, and devoid of any further explanation or supporting proof, he simply *did* submit this new evidence – as the sort of good cause that a remand under sentence six requires. Thus, the new evidence does not merit remand pursuant to sentence six.

### B. The ALJ Properly Considered Dr. Turner's Evaluation

As noted above, Plaintiff argues that the ALJ erred by failing to adequately consider a consultative psychological evaluation administered on December 4, 2009 by Dr. Turner, R. 426-31, to whom Plaintiff was referred by his attorney. (Pl.'s Br., p. 7.) Specifically, Plaintiff argues that, although the ALJ clearly considered Dr. Turner's evaluation on some level in issuing his decision, it is unclear how much weight the ALJ afforded to the evaluation, particularly given the ALJ's statement that the limitations that he found "are based upon those found by Dr. Turner." (Id. at 7-8.) Plaintiff further argues that if the ALJ is "fully crediting the report of Dr. Turner, then the [resulting] RFC is inaccurate," and that if, in the alternative, "the ALJ is rejecting the opinion of Dr. Turner, he fails to give adequate reasons for doing so." (Id. at 8.) Plaintiff submits that the ALJ's consideration of Dr. Turner's evaluation is thus ambiguous, and that a remand is necessary "to allow for a proper, unambiguous evaluation." (Id. at 9.) The Commissioner, on the other hand, contends that substantial evidence in the record proves that the ALJ properly considered the evaluation. (See Comm'r's Br., pp. 5-9.)

While it is true that, in the Eleventh Circuit, a treating physician's opinion must generally be given substantial weight, Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*), the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004) (*per curiam*). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5).[4] In this case, as Plaintiff concedes, Dr. Turner was acting in a consultative capacity when he administered a psychological evaluation at the referral of Plaintiff's attorney on a single occasion in 2009. (Pl.'s Br., p. 7.) Thus, Plaintiff does not argue that Dr. Turner's evaluation should have been given controlling weight; rather, as noted above, Plaintiff generally argues that the evaluation was somehow inadequately considered, in that the ALJ was unclear in specifying the degree of his reliance on it. (Id. at 7-8.)

---

[4] 20 C.F.R. § 404.1527(c) provides a list of factors that are considered in evaluating opinion evidence when the opinion is not that of a treating physician, or when a treating physician's opinion is not given controlling weight, including the length of the relationship, the frequency of examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2) specifically notes that, generally, more weight is given to opinions from treating sources as compared to reports of consultative examinations, since treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ."

The ALJ has a duty to develop the facts of the case fully and fairly. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (citing Ford v. Sec'y of Health and Human Serv., 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id.

Here, the ALJ discussed Dr. Turner's evaluation at considerable length, both summarizing and interpreting Dr. Turner's findings. R. 16, 18-19. The ALJ considered Dr. Turner's findings that Plaintiff had "fair" ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stressors, carry out simple detailed (but not complex) job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. R. 18-19. Additionally, the ALJ found that Dr. Turner's opinion that Plaintiff had "poor" ability to function and to maintain attention and concentration was somewhat at odds with the results of the examination itself, in that, although Plaintiff reported having memory problems and stated that he "sometimes forgets where he puts things," he "did well on memory testing in the examination." R. 16, 18-19. Thus, the ALJ found that Dr. Turner, in issuing his opinion, had apparently "disregard[ed] the claimant's lack of memory deficits on [the] office examination" and instead relied on Plaintiff's self-reported memory problem. R. 18-19. The ALJ further noted that Plaintiff had made "no complaints whatsoever"

concerning a mental impairment prior to being examined by Dr. Turner one week before the video hearing. R. 19.

Because of his skepticism of certain portions of Dr. Turner's opinion, and contrary to Plaintiff's assertions of ambiguity, the ALJ specifically noted that "Dr. Turner is a respected psychologist and his findings are entitled to *some degree of weight*." Id. (emphasis added). Moreover, in subsequently assessing Plaintiff's RFC, the ALJ stated that his findings that Plaintiff should be limited to no more than "simple, unskilled work," and that he should be limited to only occasional interaction with the general public and occasional changes in the workplace setting, were based on Dr. Turner's finding that Plaintiff's achievement scores were in the borderline range of intellectual functioning and that he had concentration deficits. Id. The ALJ's statement that the described limitations were based upon those found by Dr. Turner is not ambiguous, as argued by Plaintiff; instead, when read in conjunction with the preceding analysis of Dr. Turner's evaluation, the statement makes clear that, although the ALJ did not fully credit every aspect of the evaluation, he took it into strong consideration when making his findings concerning Plaintiff's RFCs. In other words, the ALJ neither fully credited nor rejected Dr. Turner's opinion and evaluation, as Plaintiff seems to incorrectly argue he must; rather, the ALJ attributed "some" weight to Dr. Turner's findings and then made his own findings and issued his decision accordingly. Id.

### C. The ALJ Properly Considered Other Evidence in Assigning Weight to Dr. Turner's Evaluation

Plaintiff also argues that, if the ALJ fully rejected Dr. Turner's opinion, then the ALJ, in commenting that Plaintiff had made "no complaints whatsoever" concerning his mental health prior to visiting Dr. Turner, ignored a statement made by Dr. House in Dr. House's

13

evaluation of Plaintiff on June 18, 2009. (Pl.'s Br., p. 8.) According to the evaluation in question, the reasons for Plaintiff's consultation with Dr. House were seizures, back pain, and high blood pressure, although Dr. House did also note that Plaintiff reported having infrequent "blackout episodes" accompanying some of his seizures beginning a year prior to the consultation. R. 275. In relation to the blackout episodes, Dr. House noted that "although [Plaintiff] is well-oriented and appears competent, his memory for these events is quite sketchy." Id. Later in the evaluation, Dr. House restated that Plaintiff's "memory for health issues is a bit sketchy," but also found that Plaintiff "appear[ed] to have normal intelligence" with "no evidence of dementia" and that he was alert and "oriented to time, place, [and] person." R. 277.

As an initial matter, the Court notes that, as explained above, the ALJ did *not* fully reject Dr. Turner's opinion. Nevertheless, it is clear from the ALJ's decision that, rather than ignoring Dr. House's evaluation as argued by Plaintiff, the ALJ specifically noted and summarized the evaluation, including Plaintiff's references to his blackout episodes.[5] R. 15. That the ALJ later commented that Plaintiff had made "no complaints whatsoever of any mental impairments" prior to his evaluation by Dr. Turner is immaterial: the clear basis for the ALJ's analysis concerning the evaluation was the discrepancy between Plaintiff's actions

---

[5]Moreover, the Eleventh Circuit has clarified that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered [his] medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)) (punctuation omitted); see also McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) ("[A]n ALJ is not required to discuss every piece of evidence submitted." (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998))).

and evaluation results and Dr. Turner's opinion, not his off-hand "note" that Plaintiff had made no prior complaints concerning mental impairments. R. 19. Moreover, even if Plaintiff's statement that the ALJ ignored Dr. House's evaluation were true – which, again, it is not – that argument is only tangentially related to Plaintiff's claim that the ALJ failed to properly consider Dr. Turner's evaluation, especially considering that Dr. House's evaluation involved infrequent blackout episodes related to Plaintiff's seizures, R. 275, whereas Dr. Turner's evaluation measured Plaintiff's day-to-day concentration, judgment, and memory, among other things. R. 427.

Finally, Plaintiff argues that, in the event that the ALJ fully credited Dr. Turner's evaluation, then his decision concerning Plaintiff's RFC is inaccurate, given that Dr. Turner assigned Plaintiff a score of 50 on the Global Assessment of Functioning (GAF) scale, R. 429, and that he indicated that Plaintiff had a "poor" ability to maintain attention and concentration and to function independently, R. 430. (Pl.'s Br., p. 8.) Again, the Court notes that the ALJ neither fully credited nor rejected Dr. Turner's opinion. Instead, as the ALJ clearly explained in his decision, he took Dr. Turner's evaluation and opinion into consideration and based his decision concerning Plaintiff's limitations on those found by Dr. Turner. R. 19. Notably, Plaintiff does not argue that the ALJ failed to consider the GAF score or the "poor" ratings outright, and instead simply points out their existence in the evaluation. (Pl.'s Br., p. 8.) Moreover, as correctly noted by the Commissioner (Comm'r's Br., p. 8), a "GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." Ward v. Astrue, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (citation omitted) ("[A]n opinion concerning GAF, even if

required to be accepted as valid, [does] not translate into a specific finding in regard to functional limitations."); see also Wind v. Barnhart, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005) (*per curiam*) (noting that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs'") (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 50764). Therefore, even if the ALJ *had* fully credited Dr. Turner's evaluation – which he did not – he was under no obligation to make a specific finding concerning Plaintiff's RFC based on the GAF score as determined by Dr. Turner.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 9th day of November, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE